| | |
|---|---|
| WEST SIDE TRANSPORT, INC., and WEST SIDE EQUIPMENT LEASING, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> CUMMINS INC., <br><br> Defendant. | Case No. 1:19-cv-133 <br><br> **COMPLAINT** <br><br> **(Jury Demand)** |

Plaintiffs, West Side Transport, Inc. ("West Side Transport") and West Side Equipment Leasing, Inc. ("West Side Equipment") (collectively "West Side"), for its cause of action against Defendant, Cummins Inc. ("Cummins"), hereby states as follows:

## PARTIES

1. At all material times, Plaintiff West Side Transport is and was an Iowa corporation and resident and citizen of the state of Iowa with its principal place of business located in Cedar Rapids, Iowa.

2. At all material times, Plaintiff West Side Equipment is and was an Iowa corporation and resident and citizen of the state of Iowa with its principal place of business located in Cedar Rapids, Iowa.

3. At all material times, Defendant Cummins is and was an Indiana corporation, and a resident and citizen of the state of Indiana, with its principal place of business located in Columbus, Indiana.

## JURISDICTION

4. West Side brings its Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as there is complete diversity in citizenship of the parties and the amount in controversy exceeds $75,000.

5. Venue is proper in this district pursuant to 28 USC § 1391(b) because a substantial part of the events or admissions giving rise to this claim occurred in this District.

## FACTS

6. West Side purchased and leased approximately 135 semi-trucks with an International chassis and a Cummins engine. West Side ultimately became the owner of the leased vehicles. Pursuant to the lease agreements, all manufacturer's warranties expressly inured to the benefit of the lessee.

7. The semi-trucks with an International chassis and a Cummins engine were delivered between April 2014 and May 2015.

8. Although West Side purchased a Cummins 5 year/ 500,000-mile extended warranty for each engine, West Side did not receive from Cummins written warranty documents.

9. During the express warranty period, the Cummins engines were defective with piston, piston rings, and liner issues. As a result of these defects, the Cummins engines began to consume an excessive amount of oil, which ultimately led to catastrophic failure of engines.

10. Cummins has admitted to West Side the defective nature of the engines and was able to identify to West Side the serial number range of engines that had the above identified defects. West Side had at least 90 engines that fell within that range of serial numbers. However, many of the Cummins engines even outside that serial number range demonstrated the same defects.

11. The only way to perform a warranty repair and to otherwise correct the defects and breach was to overhaul the engines. As of October 2017, West Side had submitted for express warranty repair those engines that had suffered catastrophic failure resulting from the defective parts. Cummins honored those warranty claims.

12. Because the engines were defective and eligible for express warranty repair, even in advance of catastrophic engine failure, in October 2017 West Side tendered to Cummins its entire fleet of the above-described Cummins engines, for overhaul, to correct the defects and provide express warranty repair in the form of an overhaul. That tender was made in the meeting described immediately below.

13. Around October 2017, during a meeting at West Side's office, West Side submitted to Cummins its entire fleet of defective engines for warranty repair. Cummins representatives, Dick Dearborn (branch manager), Dusty Jarret (technical support manager), and Dan Thiltgen (service manager) attended the meeting. Cummins representatives falsely represented that Cummins had completed an analysis of the failure rate of the defective engines, had sufficient data to determine engine failure rates, that only approximately five percent of the defective engines would need to be overhauled and, for that reason, that West Side should wait to resubmit each engine for repair under the warranty until the engine reached a threshold of burning one gallon of oil every 3,500 miles, after which Cummins would then repair each engine under the warranty. At no point during the meeting or afterwards did Cummins suggest that the defective engines would not be repaired under the warranty if they reached the threshold oil burn rate more than five years from the date of delivery.

14. In reliance upon Cummins' above-described representations, assurances, and agreement to repair each defective engine, West Side waited to submit the defective engines for

3

warranty repair until the engines reached the threshold oil burn rate and did not conduct further investigations into whether five percent of the engines within the identified serial range were overhauled.

15. Over the next 20 months (October 2017 to July of 2019), Cummins did exactly what was agreed in the October 2017 meeting, and overhauled West Side's engines that had reached the above-described oil burn rate. Cummins' performance of the agreement reached in the October 2017 meeting further induced West Side to delay bringing breach of warranty claims against Cummins with the anticipation that West Side would forgo this lawsuit entirely.

16. On or about August 7, 2019, West Side submitted for warranty repair an engine that suffered a catastrophic failure due to excessive oil burn. That was the first submission for repair that was more than five years after delivery of the truck. Cummins denied the warranty repair, asserting for the first time that no warranty claims would be honored more than five years after delivery of a defective engine.

17. Cummins intended that West Side rely upon the false statements it made in the October 2017 meeting, and its agreement to repair engines that had reached the specified oil burn rate, as evidenced by its subsequent conduct of providing warranty repairs once the engine reached the specified oil burn rate. As a result of its reliance on Cummins' false representations and agreement, West Side delayed bringing this action against Cummins within five years of taking delivery of the engines at issue. Under these circumstances, Cummins is estopped from claiming this action is untimely.

18. Additionally, Cummins' express warranty extends to future performance of the engines because the warranty states that the engines will conform with all U.S. Federal emission regulations, and be free from material or factory workmanship defects that would cause them to

4

fail to meet those regulations during the warranty period, and the engines failed to do so as a result of the above-described defects.

19. The above described defects of the Cummins engines have become so well known in the trucking industry that the resale value of the trucks has become materially depressed.

20. As a result of the defective nature of the Cummins engines and breaches of warranties, West Side has suffered damages, including, but not limited to, loss of value of the trucks with defective engines, loss of use of the trucks and associated down-time costs, payment for oil to replace that which was excessively consumed, and costs to repair that have not been covered by Cummins.

## COUNT I
## BREACH OF EXPRESS WARRANTY

21. West Side re-alleges and incorporates by this reference the statements contained within Paragraph Nos. 1 through 20.

22. Cummins expressly warranted its engines from defects.

23. The defects in the engines breached Cummins' express warranty.

24. Cummins' breach of its express warranty was a proximate cause of damages to West Side.

WHEREFORE, Plaintiffs, West Side Transport, Inc. and West Side Equipment Leasing, Inc., respectfully request that judgment be entered against Defendant Cummins Inc. in an amount that will fully compensate Plaintiffs for their damages, together with pre- and post-judgment interest, all attorneys' fees or costs recoverable as permitted by law, and all other damages recoverable.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

25. West Side re-alleges and incorporates by this reference the statements contained in Paragraph Nos. 1 through 24.

26. At the time of purchase, Cummins impliedly warranted that its engines were merchantable and would allow West Side to be able to use the engines in the operations of its business.

27. Cummins breached the implied warranty of merchantability by providing West Side with engines that were not merchantable.

28. The breach of the implied warranty of merchantability was a proximate cause of damage to West Side.

WHEREFORE, Plaintiffs, West Side Transport, Inc. and West Side Equipment Leasing, Inc., respectfully request that judgment be entered against Defendant Cummins Inc. in an amount that will fully compensate Plaintiffs for their damages, together with pre- and post-judgment interest, all attorneys' fees or costs recoverable as permitted by law, and all other damages recoverable.

## COUNT III
## BREACH OF ORAL CONTRACT

29. West Side re-alleges and incorporates by this reference the statements contained in Paragraph Nos. 1 through 28.

30. West Side and Cummins entered into an oral contract for Cummins to overhaul the engines owned by West Side once the engines reached the threshold oil burn rate.

31. West Side provided valuable consideration in delaying submitting warranty claims until engines reached the threshold oil burn rate.

32. West Side performed its obligations under the oral contract.

33. Cummins' has breached its oral contract to overhaul engines once the engines reached threshold oil burn rate.

WHEREFORE, Plaintiffs, West Side Transport, Inc. and West Side Equipment Leasing, Inc., respectfully request that judgment be entered against Defendant Cummins, Inc. in an amount that will fully compensate Plaintiffs for their damages, together with pre- and post-judgment interest, all attorneys' fees or costs recoverable as permitted by law, and all other damages recoverable.

## COUNT IV
## PROMISSORY ESTOPPEL

34. West Side re-alleges and incorporates by reference the statements contained within Paragraph Nos. 1 through 32.

35. Cummins made a clear and definite promise to West Side that Cummins would overhaul the engines once the engines reached the threshold oil burn rate.

36. Cummins made a promise to overhaul the engines once the engines reached the threshold oil burn rate fully knowing that if they did not repair the engines, West Side would have resubmitted its warranty claims and/or filed this lawsuit.

37. West Side delayed resubmitting the engines for warranty repair and/or filing this lawsuit based on Cummins' promise to overhaul the engines once the engines reached the threshold oil burn rate. West Side suffered financial harm when Cummins failed to provide express warranty repair.

38. The only way injustice can be avoided is to enforce the promise made by Cummins to overhaul the engines once the engines reached the threshold oil burn rate.

WHEREFORE, Plaintiffs, West Side Transport, Inc. and West Side Equipment, Leasing Inc., respectfully request that judgment be entered against Defendant Cummins Inc. in an amount that will fully compensate Plaintiffs for their damages, together with pre- and post-judgment interest, all attorneys' fees or costs recoverable as permitted by law, and all other damages recoverable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues triable to a jury.

    /s/ Matthew L. Preston
Matthew L. Preston, AT0006314
Brad J. Brady, AT0001138
David T. Meyers, AT0013630
**BRADY PRESTON GRONLUND PC**
2735 1st Avenue SE
Cedar Rapids, IA 52402
Phone: 319/866-9277
Fax: 319/866-9280
MPreston@bpglegal.com
BBrady@bpglega.com
DMeyers@bpglegal.com

**ATTORNEYS FOR PLAINTIFFS**

8

Case 1:19-cv-00133-LRR-MAR   Document 1   Filed 12/03/19   Page 8 of 8